IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MAURICE STOKES, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. JKB-19-1119 |
| RICHARD DOVEY, *et al.*, | * | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM OPINION

Self-represented Plaintiff Maurice Stokes, an inmate currently incarcerated at Maryland Correctional Training Center ("MCTC") in Hagerstown, Maryland, filed the above-captioned 42 U.S.C. § 1983 civil rights Complaint against Warden Richard Dovey, George J. Morris, and Lt. Simmons on April 15, 2019, alleging that they failed to protect him from a known risk of harm. ECF No. 1. He seeks monetary damages. *Id.*

On September 27, 2019, Defendants Richard Dovey and George J. Morris[1] filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. ECF No. 28. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Court informed Plaintiff that the failure to file a response in opposition to Defendants' motion could result in dismissal of the Complaint. ECF No. 29. Plaintiff sought and was granted an extension of time to file an amended complaint and to respond to the dispositive motion (ECF 30, 31 and 32) but has filed nothing further.

This Court deems a hearing unnecessary. *See* Local Rule 105.6 (D.Md. 2016). For the reasons set forth below, Defendants' Motion, construed as one for summary judgment, shall be granted.

---

[1] Lt. Simmons has not been served with the Complaint. The Complaint against him is dismissed without prejudice.

**Background**

*A. Plaintiff's Allegations*

In early May of 2018, Plaintiff advised correctional staff of the location of weapons possessed by Muslim inmates. ECF No. 1 at p. 3. Staff performed a search but only uncovered one weapon. *Id*. Plaintiff wrote to staff again advising that weapons remained in the facility, but nothing was done. *Id*. On May 12, 2018, Plaintiff was moved from Cell 6A to 6C where he was stabbed. *Id*. Plaintiff states that the tier officer "turned a blind eye and let the individual get away with it and [he] patched [him]self-up and stayed in the cell." *Id*. Later that day the inmate who stabbed Plaintiff slid the knife under Plaintiff's cell door and told him he better use the knife or go on protective custody. *Id*. Plaintiff hid the knife on his body and later that day it was found by staff during a strip search, "still wet with [Plaintiff's] blood." *Id*. He later learned from an unidentified correctional officer that intelligence officers told correctional staff that Plaintiff had informed on the Muslims and the correctional officers told the Muslims, which was why he was stabbed. *Id*., p. 4.

Plaintiff was taken to restricted housing where he reported that he was "set up" by correctional staff. Lt. Simmons directed Plaintiff not to tell anyone his story and he would assist Plaintiff in having the disciplinary charges reduced. *Id*. Plaintiff filed an administrative remedy procedure ("ARP") when he found out the person who stabbed him was released back into population. *Id*., p. 3. Because of the ARP Simmons did not help Plaintiff with the disciplinary charge. *Id*. Plaintiff states that unidentified correctional officers "came down . . . hard" on him for filing the ARP and gave it to the individuals named in the ARP. *Id*., p. 4.

Additionally, Plaintiff states that correctional officers intercepted his letters, requests and ARPs because they felt he was speaking out. *Id*., p. 4. He states that they gave them to inmates

so then he was known as a snitch and his life was placed in danger and he stopped writing. *Id*. Plaintiff's family wrote to the Warden, Commissioner, Chief of Security and Inmate Affairs regarding "illegal practices" but nothing happened. *Id*., p. 4. Plaintiff states that because of the information and rumors spread throughout the prison, someone "might try to put a knife in [his] back" at MCTC. *Id*., p. 4.

### B. Defendants' Response

The Investigation and Intelligence Division ("IID") of the Department of Public Safety and Correctional Services ("DPSCS") investigated Plaintiff's possession of a knife. ECF No. 28-2. The investigation revealed that on May 12, 2018, MCTC Officer Jordan Crilly received a note that Plaintiff had been assaulted and was bleeding. *Id*., p. 6. Crilly and Officer Steel escorted Plaintiff to the Housing Unit 6 Laundry Room for a strip search. *Id*. When Crilly asked Plaintiff if he had anything on him, Plaintiff answered: "Yes Crilly, I have a knife in my pocket." *Id*., p. 7. The knife was 6.5" in length with a cloth handle which was bloody. *Id*. at pp. 7, 23. Plaintiff "had a cut on his head but he refused to talk about it." *Id*. Plaintiff declined to make any statements to the IID investigator. *Id*. After the incident, Plaintiff was placed on administrative segregation and subsequently transferred to Maryland Correctional Institution in Hagerstown. ECF No. 28-5, ¶ 2.

As a result of the incident, Plaintiff was served with a notice of inmate rule violation. He entered into a plea agreement, pleading guilty to a Rule 105 violation, and was sentenced to 90 days segregation, loss of 90 days good conduct credit, and the mandatory loss of visitation for a year. ECF No. 282, pp. 26-32.

Additionally, on July 9, 2018, Plaintiff was charged in state court with possession/receipt of a weapon while confined/detained and concealment of a dangerous weapon. ECF No. 28-2, p. 34. The matter was forwarded to the Circuit Court for Washington County where Plaintiff was

tried on November 5, 2018 and found guilty of possession/receipt of a weapon while confined/detained. ECF No. 28-4. He was sentenced to a term of incarceration for one year and a day. *Id.*, p. 2. The other charge was *nolle prossed*. *Id.*

Plaintiff did not file any complaints or grievances with the Inmate Grievance Office regarding the allegations in this case. ECF 28-3, ¶ 3.

## Standards of Review

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Hous., LLC v. The City of Salisbury, Maryland*, 672 F. App'x. 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

Because Defendants filed a motion titled "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment" along with documents in support, Plaintiff was on notice that the Court could treat Defendants' motion as one for summary judgment and rule on that basis. *See id.* Accordingly, the Court will review Plaintiff's claim under the Rule 56(a) standard.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The Court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

**Analysis**

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia,*

428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016). Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

In response to the Complaint, Defendants argue that Plaintiff has failed to exhaust his administrative remedies, failed to allege a plausible claim of deliberate indifference under the Eighth Amendment, failed to allege any personal involvement on the part of Defendants, and Defendants are entitled to qualified immunity. ECF No. 28-1.

### A. *Exhaustion*

Plaintiff's complaint is subject to dismissal pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e, because it has not been properly presented through the administrative remedy procedure. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. App'x. 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and

6

does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). Nevertheless, a claim that has not been exhausted may not be considered by this Court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory, and a court usually may not excuse an inmate's failure to exhaust. *See Ross v. Blake*, 136 S.Ct. 1850, 1856-57 (2016).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). But, the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any Division of Correction official or employee. Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S.") § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional

ARP process before filing a grievance with the IGO.  *See* C.S. § 10-206(b).

Inmates housed at an institution operated by Maryland Department of Public Safety and Correctional Services ("DPSCS") may avail themselves of the administrative grievance process, which is designed for "inmate complaint resolution."  *See generally* C.S. §§ 10-201 *et seq.*; Code of Maryland Regulations ("COMAR") 12.07.01.01B(1) (defining "ARP").  If an ARP is filed and denied, the prisoner may appeal the denial within 30 days to the Commissioner of Correction.

If the Commissioner of Correction denies the appeal, the prisoner may file a grievance with the IGO, also within 30 days.  C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B.  The prisoner must include in the grievance copies of the initial request or administrative remedy, the Warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response.  COMAR 12.07.01.04(B)(9)(a).  If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing.  C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B.  An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).

Here, while Plaintiff contends that he filed ARPs regarding the issues complained of, it does not appear that he pursued his remedies to the IGO as required. As discussed above, the PLRA requires that inmates exhaust all available remedies.  Because Plaintiff failed to do so, Defendants are entitled to summary judgment.

### B.  Personal Participation

Even if Plaintiff's failure to exhaust his administrative remedies could be excused, his claims nevertheless fail.

Other than naming Defendants in the caption of his Complaint, Plaintiff has not alleged how any of the named Defendants were responsible for the conduct alleged.  Accordingly,

Plaintiff's complaint is subject to dismissal as to each Defendant. The only claim of personal conduct as to any of the named Defendants is that Lt. Simmons promised to assist Plaintiff but declined to do so after Plaintiff filed an ARP. Plaintiff does not allege that Simmons failed to protect him from a known risk of harm and fails to explain how he was harmed by Simmons' alleged conduct. Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Additionally, supervisory defendants Warden Dovey and Security Chief George Morris were not personally involved in any of alleged wrongful conduct. Their status as supervisory employees, without more, is not enough to impose liability. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Under § 1983, individual liability must be based on personal conduct. *See Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985). Further, absent subjective knowledge, a prison official is not liable. *Farmer v. Brennan,* 511 U.S. 825, 847 (1994); *see Johnson v. Quinones,* 145 F.3d 164, 168 (4th Cir. 1998).

Here, nothing in Plaintiff's Complaint suggests that Warden Dovey or Security Chief Morris were personally involved in the conduct alleged. Moreover, the record evidence demonstrates that none of these Defendants were personally involved in any of the conduct complained of, entitling them to summary judgment.

## Conclusion

Summary judgment will be granted in favor of Defendants. A separate Order follows.

Dated this 20th day of July, 2020.

9

FOR THE COURT:

_____/s/_____
James K. Bredar
Chief Judge